### THUNDER BAY LIMESTONE CO. v. DETROIT & M. RY. CO.

(District Court, E. D. Michigan, N. D.   October 29, 1923.)

#### No. 47.

1. **Railroads �köü7—Order of Interstate Commerce Commission held not to revoke certificate of public convenience and necessity for extension.**

   Where railroad received certificate of public convenience and necessity from the Interstate Commerce Commission for construction of a 12-mile extension under Interstate Commerce Act, § 1, pars. 18–21, as added by Transportation Act 1920, § 402 (Comp. St. Ann. Supp. 1923, § 8563), but discovered, after spending one-third of the total amount in construction of the extension, that it was necessary to make a slight change in the route, and made an application to the Commission for a new certificate for the construction of the extension along the new route in the same general direction, with the same termini, as the old route, to which an owner of land over which the railroad was required to obtain a right of way filed objections, an order of the Commission "that the said proceeding be and it is hereby reopened for further hearing at a time and place to be fixed," did not suspend and revoke the certificate previously issued.

2. **Railroads ⊨7—Certificate of public convenience and necessity, granted by Interstate Commerce Commission, held to authorize construction along slightly changed route.**

   Certificate of public convenience and necessity, granted by Interstate Commerce Commission under Interstate Commerce Act, § 1, pars. 18–21, as added by Transportation Act 1920, § 402 (Comp. St. Ann. Supp. 1923, § 8563), for construction of a 12-mile extension, *held* to authorize the construction of an extension with the same termini, running in same general direction, as extension shown by maps filed with the application for the certificate, and which differed from location shown by such maps for a distance of only 1¼ miles, where the two routes were separated not more than 500 feet at the furthest point.

In Equity.   Bill by the Thunder Bay Limestone Company against the Detroit & Mackinac Railway Company.   Bill dismissed.

Appeal dismissed 295 Fed. ——.

Campbell, Bulkley & Ledyard, of Detroit, Mich., and Frank T. Hinks, of Alpena, Mich., for plaintiff.

Henry & Henry, of Alpena, Mich., and Victor D. Sprague, of Cheboygan, Mich., for defendant.

⊨For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

TUTTLE, District Judge, The plaintiff filed its bill of complaint herein against defendant, alleging that defendant was proceeding to construct its Rockport extension without having first obtained a certificate of public convenience and necessity from the Interstate Commerce Commission, in accordance with the provisions of paragraphs 18 to 21, inclusive, of section 1 of the Interstate Commerce Act (being the act of February 4, 1887, c. 104, 24 Statutes at Large, 379, entitled "An act to regulate commerce," as amended), which paragraphs were added to said section 1 by section 402 of the so-called Transportation Act (the Act of February 28, 1920, c. 91, 41 Statutes at Large, 456 [Comp. St. Ann. Supp. 1923, § 8563].). Defendant railroad admits the intended construction of the Rockport extension, but alleges that it has the certificate of public convenience and necessity from the Interstate Commerce Commission. Two meritorious questions are presented: First, is the certificate of public convenience and necessity shown to have been issued by the Interstate Commerce Commission to defendant for the construction of its Rockport extension, now in force? and, second, is such certificate sufficient to authorize such defendant to "undertake the extension of its line of railroad" and "acquire and operate such extension" on and over the plaintiff's land on the line herein designated as the new or relocated line?

The material facts as shown by the record before the court are:

Defendant railroad, desiring to construct an extension 12.1 miles in length, which would run in a northerly and northeasterly direction from the city of Alpena to the unincorporated village of Rockport, all in Alpena county, Mich., made and adopted a survey and map thereof, and caused the same to be properly certified by its officers and approved by the Michigan Public Utilities Commission, and filed in the office of the register of deeds of Alpena county. It also applied to the Interstate Commerce Commission under paragraphs 18 to 21, inclusive, of the Interstate Commerce Act, for a certificate of public convenience and necessity for the construction of said proposed extension to be known as the "Rockport Extension." In its application to the Interstate Commerce Commission for such certificate of public convenience and necessity, the proposed extension was described thus:

"(j) The proposed route of said extension will leave the present so-called Avery branch at a point within the city of Alpena in said county of Alpena, and will extend in a northeasterly and northerly direction to the extreme northeasterly corner of said Alpena county, the termini of the proposed railroad being an unincorporated village called Rockport.

"(k) The total number of miles of main track of the proposed extension to applicant's line of railroad is 12.1 miles."

Upon receipt of this application the Interstate Commerce Commission caused defendant railroad to submit and file with it a questionnaire. Attached to this questionnaire were maps of the proposed extension showing the route as surveyed, adopted, and approved, as aforesaid. The Interstate Commerce Commission caused testimony to be taken in the premises, on notice, before the Michigan Public Utilities Commission, which testimony was duly returned by the latter commission to the Interstate Commerce Commission, with recom-

mendation that the certificate of public convenience and necessity applied for be issued. Thereupon on July 2, 1923, the Interstate Commerce Commission made a report that:

"The Detroit & Mackinac Railway Company, a carrier by railroad subject to the Interstate Commerce Act on January 5, 1923, filed an application under paragraph (18) of section 1 of the act for a certificate that the present and public convenience and necessity require the construction by it of an extension of its line of railroad from a point on its so-called Avery branch within the city of Alpena in a general northerly direction to Rockport, a distance of 12.1 miles, all in Alpena county, Michigan."

The report then sets forth much of the showing made in support of the application and finds:

"Upon the facts presented we find that the present and future public necessity and convenience require the construction by the applicant of the extension of its line of railroad in Alpena county, Michigan, described in the application. A certificate to that effect will be issued."

Thereupon a certificate of public convenience and necessity was issued by the Commission, the material part of the language of which is:

"It is hereby certified that the present and future public convenience and necessity require the construction by the Detroit & Mackinac Railway Company of the extension of its line of railroad in Alpena county, Michigan, described in the application and report aforesaid."

After receiving the certificate of public convenience and necessity, defendant railroad began to acquire the right of way and to construct the extension. It secured the right of way over approximately 11 miles. It brushed and cleared practically all of the right of way so acquired and graded a large portion of it. Ties and rails were laid on a part of it. This work and material cost the railway company approximately one-third of the entire estimated expense of such extension. While doing this work,it was found necessary in one place to vary slightly the line as originally shown by said maps. This did not change the general direction of the line. Defendant railroad took the necessary steps to alter the line under the state statute by adopting the survey and map of the new line, causing the same to be approved by the Michigan Public Utilities Commission and filing the same as provided by law. The old survey and the relocation were identical, except for a distance of less than 1¼ miles along said line, where they were separated not more than 500 feet at the farthest point. Both lines had the same termini and ran in the same general direction. Both old and new lines crossed plaintiff's wild and unimproved land in nearly a parallel northeasterly and southwesterly direction on the same 40-acre subdivision, and were less than 500 feet apart where they entered the west side of plaintiff's 40 and about 400 feet where they left the east side of said 40. The new line was to the south of the old line, and was on land of the same general character.

Thereafter defendant petitioned the Interstate Commerce Commission for a supplemental order. This petition set forth the facts respecting the relocation of its line, asked that the new amended map

be substituted for the original map, and prayed that an order be made by the Commission that the certificate of public convenience and necessity theretofore granted should apply to the new or amended map. The defendant railroad negotiated with plaintiff for right of way over plaintiff's land for the new route, but was unable to obtain the same, and then defendant began condemnation proceedings in the probate court for Alpena county.

At this time plaintiff filed its bill herein asking that such condemnation proceedings and the construction of the Rockport extension by defendant be restrained. Plaintiff also filed with the Interstate Commerce Commission notice of its objections to the approval of the new map of defendant alleging therein, among other things that:

"The Thunder Bay Limestone Company calls the attention of the Commission to the fact that, while testimony was taken with reference to the proposed line, no one appeared in opposition thereto and the attention of the Commission was not called to the fact that there is already a direct railroad route between Alpena and Rockport, which is three or four miles shorter than is the distance of the proposed amended map of the Detroit & Mackinac Railway Company. As stated, no reference was made in the testimony taken in this proceeding, to the present existence of this line of railroad between these two points."

Upon the hearing herein it appeared without dispute that it was shown in the testimony before the Interstate Commerce Commission, at the time of its hearing on the original application of the defendant railroad for a certificate of public convenience and necessity for its Rockport extension, that there was an abandoned privately owned railroad track, not a public common carrier, existing between the two points (a portion of the rails having been removed), that the same did not serve the public, that it had not been operated even privately for approximately two years, and that the alleged owner of a part of said private track refused to permit its repair and operation by parties having use for a railroad in the vicinity. Testimony was taken at great length, on said hearing before the Commission. as to the trucking of material from Alpena to Rockport because railroad facilities were lacking.

On October 19, 1923, without notice to either party and without any hearing, the Interstate Commerce Commission made an order entitled "In the Matter of the Application of the Detroit & Mackinac Railway Company for a Certificate of Public Convenience and Necessity Authorizing It to Construct an Extension of a Line of Railroad, Finance Docket No. 2739," the material part of which is as follows:

"Upon further consideration of the record in the above-entitled proceeding, of the petition of the applicant for a supplemental order, and of the petition of the Thunder Bay Limestone Company, for permission to intervene therein;

"It is ordered that said proceeding be and it is hereby reopened for further hearing at a time and place to be fixed."

The parties hereto are resident citizens of this district and jurisdiction of the court is invoked under subdivision 8 of section 24 of the Judicial Code (Comp. St. § 991).

294 F.—61

[1] 1. Plaintiff contends that the order of October 19, 1923, of the Interstate Commerce Commission suspends and revokes the certificate of public convenience and necessity issued by that Commission on July 2, 1923. I am unable to find that the order of October 19, 1923, has that effect. In reliance upon the certificate of public convenience and necessity issued to defendant on July 2, 1923, it has acquired nearly the entire right of way for its Rockport extension and has done much work thereon. It has vested rights in and under such certificate of public convenience and necessity. That certificate could in no event be revoked or suspended without sufficient cause and after a hearing had upon notice. There has never been a hearing, with or without notice, and no cause for suspension or revocation is made to appear. In my opinion, the order of October 19, 1923, should be construed reasonably and in the light of the facts under which it was issued. The order of October 19th does not purport to either suspend or revoke the certificate of public convenience and necessity issued July 2, 1923. It simply provides for a reopening for further hearing on which the Interstate Commerce Commission can make an order approving the map of the relocated line, or a negative order denying the approval because deemed unnecessary, or an order dismissing the supplemental petition or such other order as the Interstate Commerce Commission may deem legal and proper. In the meantime the certificate already issued stands in force and effect.

[2] 2. It is further contended by plaintiff that the certificate of public convenience and necessity issued by the Interstate Commerce Commission to the defendant railroad, on July 2, 1923, for the construction of its Rockport extension, does not cover the new relocated line of that road, and is not sufficient to authorize the construction of the particular line sought to be run through plaintiff's land. No cases adjudicated by the courts have been cited by the plaintiff on this question, but defendant cites decisions of the Interstate Commerce Commission to the effect that a relocation of an existing line where the route is sought to be changed to a small extent, not varying the general route nor the patronage served by the railroad, is such an immaterial variance as does not require authorization by the Interstate Commerce Commission, 67 Interst. Com. Com'n R. 748, Finance Docket No. 1236; 67 Interst. Com. Com'n R. 252, Finance Docket No. 1122; 67 Interst. Com. Com'n R. 273, Finance Docket No. 1142; 67 Interst. Com. Com'n R. 184, Finance Docket No. 1083; 65 Interst. Com. Com'n R. 654 at 657, Finance Docket No. 1064. In such a matter as the one at bar the ruling of the Commission is entitled to consideration. However, in my opinion, such a ruling follows a proper consideration of the function of the Commission in the premises. The Commission is interested in the public necessity and convenience in connection with the construction of the road in the territory to be served. It is interested in the public; it is not interested in the minutiæ of the particular lands to be acquired for the right of way nor the rights of the individual owners thereof. These are all matters for consideration in the condemnation proceedings pending in the probate court. So long as the public to be accommodated will actually

be served just as well by the line, it is immaterial to the Interstate Commerce Commission that the location of the line is slightly varied. To hold otherwise would require the approval of each contemplated change in the route, however small.  Among the Interstate Commerce Commission cases cited will be found some in which the certificate of public convenience and necessity was issued, where there had been no definite road established, except by naming the main stops and the ultimate termini.  There are other cases among those cited in which the Interstate Commerce Commission holds that the relocation of lines involving a variation of as much as a mile, but serving the same general public, does not require a certificate of authorization.  These are matters of administration and particularly within the purview of the Commission.  The Commission nominates the general route, and may well name the general stops, since these things concern the public to be served by the road to be constructed, but whether, as in the case at bar, the line of road passes through the northerly portion of a piece of wild, unoccupied land, or passes 500 feet farther south on the same 40 acres of land, is a matter with which the Commission ought not to be burdened.  In the case at bar it will be noted that the application to the Interstate Commerce Commission for the certificate of public convenience and necessity did not detail the particular lands to be crossed, nor the particular government subdivisions nor the particular line of the route, but simply described the route as extending in a northeasterly and northerly direction from Alpena to Rockport, and it was that description of the route to be built that the Commission approved and authorized to be constructed.  The proposed line crossing plaintiff's land, the construction and condemnation of which is sought to be enjoined by plaintiff, is well within the certificate of public convenience and necessity issued to the defendant by the Interstate Commerce Commission on July 2, 1923.

In the construction of a railroad between two given points, it is inevitable that some landowner may be more or less damaged and inconvenienced.  No railroad could be constructed which would pass over every owner's land to his entire satisfaction; but adequate provision is made in the condemnation laws to recompense the owner for such damages.  The Michigan laws are very clear that in all cases the railroad must pay "just compensation and damages."

The necessity for a railroad between Alpena and Rockport for the welfare of the public generally is a question wisely vested in the sound discretion of the Interstate Commerce Commission.  The question as to compensation and damages to the landowner over whose land it passes is one to be determined by commissioners or a jury who are privileged to view the premises and hear the evidence.

Many contingencies may confront the engineer in the construction of a road which makes it imperative to change slightly the route originally deemed adequate.  If the change enhances the damage to any landowner, the railroad company must make the change at its peril.

In consideration of the facts incident to the questions presented, the injunction prayed for will be denied, the bill of complaint dismissed, and a decree made conforming to this opinion.